The rescheduled Carmody v. Board of Trustees of the University of Illinois. Mr. Carmody has brought an appeal based on various denials at the district court level, including a order granting summary judgment against individuals who have violated the statute of limitations of the University of Illinois. For the sake of this morning and brevity, I'm going to focus on a lot of the pre-trial issues because we don't have a lot of time and frankly there's many issues in there. For the sake of the pre-trial, kind of a rehash of the facts back in the day, in 2010, Mr. Carmody was subject to state court litigation in which he had brought an action against another professor at the University of Illinois. As part of that action, there had been a deposition that specified that Mr. Carmody had violated the statute of limitations of the University of Illinois. He spoke to the character of the other party and Mr. Carmody had received emails related to the deponent's characterization of that individual. Those emails became an issue and eventually part of the action that led to the termination of Mr. Carmody. The state court action had put those emails under seal and under protective order during that same month. Shortly thereafter, the University began an investigation to determine how Mr. Carmody had accessed the emails and whether he had violated any University policies in doing so. The University brought a charge against Mr. Carmody, signed by Defendant Adesita, stating that he had improperly accessed the emails through the University system as part of his function as an IT professional. It proceeded then to terminate him on September 23rd, the very day that the protective order was removed for the sake of, again, because he had improperly accessed the emails. The charge letter itself, which was signed by Mr. Adesita, identified this as improper access. The charge letter, when it was issued though, the University had already conducted an investigation at that time and their internal investigation had determined that there had been no improper access or that they couldn't prove it or substantiate it. Notwithstanding that, they never amended the charge against Mr. Carmody and then proceeded to terminate him on those same grounds. The termination letter that he received, again, identified the improper access, also included a sentence related to the idea that he had not properly notified his supervisors with regards to the emails. The University has contended all throughout the process that this was not a separate charge and that the actual charge was, again, the improper access. Is this part of your argument where you're arguing that the district judge should have granted you summary judgment before trial on the pre-termination claim? We believe that Mr. Carmody's claim that the charge that was actually brought, that they had never given improper notices to the actual charge. His counsel in September of 2010 had asked what the actual charge was against him. Could you answer my question, please, counsel? Are you trying to argue here the district judge erred in not granting you summary judgment? Yes, with regards to... How can we review that after a trial? In this particular case, admitted it is post-trial, but, again, several of the individual defendants and information due to motions in limine were eliminated as part of that process. So it was not possible for Mr. Carmody to present evidence on several of these issues. So are you arguing an error on summary judgment, which we really can't review at this point, or are you arguing trial errors, and I'm trying to understand... Well, more specifically, for this area, I'm focusing in on two separate issues. The first one is with regards to the granting of summary judgment against certain specific defendants, but, to your point, with regards to the granting of motions in limine with regards to pretrial bias, in the sense that, like I say, Mr. Carmody was never given notice of the actual charges against him and, therefore, never had any information. Now, I admit it, in order to prove that, you have to show that he was prejudged. But our argument would be that they knew at the time that they terminated him that the charge they brought against him was not supportable, and, therefore, they had prejudged his termination at that point. And that's based... What was the evidence that you were prevented from presenting, besides the one document where the privilege issues have swirled around? Anything else? Well, subsequently, Mr. Carmody has discovered additional information that shows that certain persons were involved in the investigation that was not... Is this in response, counsel? I'm sorry, Your Honor? Are you talking about the response to the State Freedom of Information Act requests? Yes, Your Honor. Where are those in our record? Other than the adjudicator's report in the post-termination that was received after the end-of-fact discovery, the remaining FOIAs are not part of the official record. How can we consider them? Based on an inherent equitable principles that the court has allowed for the sake of truth... I beg your pardon? Sorry. You want to just submit new evidence to the Court of Appeals? Is that the idea? And do we have it in our record now, or are we just supposed to take your word for it? You have it in your record now. Where? It was part of the appendix for the sake of the submission in this particular case. But, again, this information that was not produced as part of it at the district court level was things that should have been produced and were denied at the district court level by the defendants. And have you taken that up with the district court? I'm sorry, Your Honor? Did you take that up with the district court? I have not. I came into the case just this year well after the trial had been concluded and the appellate process had begun. So in this appendix, what items are not in the record? The appendix is pretty much Mr. Carmody's FOIA production that he's received. I'm looking at the table of contents. We've got deposition excerpts. The depositions are part of the record, Your Honor. Okay. Tell me what is or what isn't, okay? Let me grab mine. Please. Sure. The deposition excerpts that are identified here are not, are part of the record. The FOIA request is not. Emails related from Mr. Leroy, who is the post, who is the adjudicator at the administrative level, they're not part of the record, as well as the FOIA request right after that. Calendars, calendar entries that are identified here are, again, things that were obtained by Mr. Carmody after the case was decided at the district court level. Emails from Mr. Leroy, again, these are also documents that were obtained by Mr. Carmody after the fact. Deposition excerpts, again, are part of the record. And then the emails, again, that are obtained by Mr. Carmody, again, after the fact pursuant to his FOIA request is on the second page. And the calendar entry, again, is something that he obtained through FOIA. Thank you. These are documents that should have been obtained as part of the discovery process. And why Mr. Carmody had to obtain these pursuant to FOIA after the fact, through the same university, is part of the question that goes on here as to whether he received fair treatment in the underlying case. The court, like I say, granted a motion to limit it, denying his ability to prove pre-trial bias or pre-hearing bias. But, again, they based their decision on a very limited record because the university had not produced the documents we have here. In fact, the charge that we've raised before that says that Mr. Carmody had been subject to termination, not based on improper access of the records, but rather on his failure to notify his supervisor that he had received the emails, was found also through FOIA, unfortunately. An unknown report that had been drafted, Mr. Leroy identified that that was indeed a charge, even though the university had denied it all along. Mr. Polizzi, let me suggest, I'm wondering whether you're in the wrong court. What you're describing sounds like a Rule 60B motion based on newly discovered evidence. Well, like I say, Your Honor, based on, if it was a Rule 60B motion, it would have to have been made well before this period and well before I entered into the case. And that's why I'm asking the court to rely on more general, inherent, equitable principles to supplement the record. What are those general, equitable principles that allow you to put new evidence in at the Court of Appeals that the other side doesn't have a meaningful opportunity to respond to? Towards the goal of basically truth and fairness. I mean, there's cases in other circuits that speak to the idea where the other party, for example, in Mangini v. The United States, 725 F. 2nd, 1474, where the other side has somehow impaired your ability to gather evidence, that it is on equitable principles okay for the court to expand the record in order to get a true and fair result. And I recognize that pursuant to 60B, we'd be outside of the timeline. You're well into your rebuttal time, Mike. I'm sorry, Your Honor. Could you tell us, with respect to the post-termination proceedings that, if I recall correctly, Mr. Carmody withdrew from, what remedy are you seeking? With regard to the post-termination proceedings, Mr. Carmody is seeking those to be reinstated based on his findings. A fresh hearing. I'm sorry? He wants a fresh hearing. Yes, he does. Okay. Anything else? How you use your time is up to you. No, I'll save a couple of minutes for rebuttal, Your Honor. All right. Thank you. Thank you. Mr. Brinkman? Thank you, Your Honor. May I please support William Brinkman on behalf of the defendants in this case? As the court has referenced, this is the second time this case has been up on appeal. The first time was on an appeal from a dismissal by the district court of the entire case. The court ruled that the post-termination process, having been abandoned by a plaintiff, the dismissal was affirmed and sent back to the district court for determination of whether or not the pre-termination notice and hearing process met due process standards. We had a jury trial in this case. The jury fully considered all of the issues that were raised by this court and by the complaint and found that there was adequate notice and adequate pre-termination hearing given to Mr. Carmody. Mr. Brinkman, we're being told that this appendix is full of responsive documents that were never produced in discovery. Right. That's what we have been told as well, but we were never asked for documents regarding the post-termination process because this proceeding in the district court concerned only the pre-termination process. So the attorney for Mr. Carmody at the district court level never served us with any discovery that had to do with the post-termination process. We produced many, many, many hundreds of pages of documents in this case. There was never an objection by the plaintiff to the documents that we produced. There was never a motion to compel. There was never a problem with our production. Even though it appears that, unknown to us, without disclosure to us, Mr. Carmody was gathering documents through the FOIA process on and off at various times. Apparently, quite a bit of that was gathered immediately preceding the trial. It was not disclosed to us, and the plaintiff filed this motion to reconsider and motion to amend the complaint four days before the trial was set to start, asking the court to reopen the matter of the post-termination due process that this court had already ruled on. We did not even have an opportunity to respond to that motion because the district court judge denied it, stating that he was without authority after this court's judgment and mandate to reopen the post-termination process, which this court had ruled was properly dismissed. Could I ask you about this privilege document that was disclosed? Yes. Was that listed on your privilege log?  How? But not until after we discovered that they had taken a picture of it using their cell phone. We had a 140-page privilege log after going through thousands and thousands of documents that were requested by counsel for Mr. Carmody. We had made our best effort to separate the privilege documents from the non-privileged documents. We produced the non-privileged documents in our office, and Mr. Carmody and his attorney appeared in our office, and they were going through the documents designating which ones they wanted us to copy for them. Without designating the privilege document that later became an issue, they took a picture of it. They did not designate that for copying? He did not designate it for copying because he took a picture on his cell phone. It's hard to read, yes. I think we would have caught it if he had designated it for copying. I would hope. In terms of inadvertent disclosures, this one's a beaut. It's marked pretty clearly. The only explanation I can give, and this is not by way of an excuse, is that as referenced by the 140 pages of the privilege log, there were thousands and thousands and thousands of pages of documents, and we had multiple people in our office going through them, and this one was missed. This was the only one that we know of that was missed. It was an important document. It was missed. When counsel attempted to use it at the deposition of the dean of the College of Engineering, we objected. Counsel refused to return it to us. We filed our motion to compel, which Judge Bruce allowed and ordered the plaintiffs not to use that document, and further proceeding in the case. At the trial of this case, the matter of the state court judgment, whether Mr. Carmody could not participate in the pre-termination hearing because it would violate a state court order, that was fully vetted. The state court order was a very narrow order. It only ordered that the contents of the e-mails that were the subject of the security breach could not be disclosed. It did not prevent Mr. Carmody from answering questions as to how he got access to those e-mails. It didn't prevent him from answering questions regarding how he used them, who he shared them with, who he talked with them about, whether he had permission to use them, whether he had disclosed to Professor Deborah Thurston that her private confidential attorney client e-mails had been placed in his possession. Those were questions that he was not prohibited from answering at the pre-termination hearing, and he and his attorney basically stonewalled. They wouldn't answer any questions at that pre-termination hearing. They were offered the opportunity to respond in writing. They did not do that initially. They were offered the opportunity to go to court with the University Legal Council and get a clarification of the state court's order. They did not agree to do that. There is a claim by Mr. Carmody that there was a charge that he did not have notice of and that he did not have an opportunity to respond to it. The jury fully considered this claim by Mr. Carmody at the trial. He characterized this charge as a charge that he failed to report the security breach to his superiors. It's undisputed that this was a security breach, and the policy on the use of computers, which really is the central document in terms of these charges against Mr. Carmody, references violation of that policy being an improper use of private e-mails. It requires that you give notice to the person whose private e-mails have been accessed. It requires that you consult your supervisor if you have a question about improper use of university information, that the policy forbids private use or use outside of university purposes of information from computers or use of computers. It also references a chief information officer when he becomes aware of a security risk that he may terminate network access and notify disciplinary and legal authorities. Mr. Carmody was the chief information officer of the department at the University and the College of Engineering where he worked. He didn't get permission. He didn't notify his superior. These were all issues that the jury heard about and decided at the trial. Mr. Carmody is claiming that he did not have an adequate opportunity to respond. I've talked about the initial hearing on July 28, 2010, where he refused to answer any questions. After being offered to respond in writing, no response was made. He was given on September 7 a letter that had the findings and recommendations from this investigation. In that letter, it included as a summary of the information, a summary of the investigation, there were 19 paragraphs. One of those paragraphs was that he did not report this to his supervisor. These are all findings that relate back to the policy on the use of computers that he was charged with violating at the university. He asked through his attorney if he could respond to that September 7 letter, which specifically mentioned failure to report this to your supervisor. His attorney responded on September 15, but he did not respond in a substantive way. He responded basically attacking the process. On September 17, Mr. Carmody and his attorney were told that a decision would be made on September 23 with regard to the investigation, and then on September 23, he was notified of the termination. September 23 was the very first time Mr. Carmody's attorney went into state court to try to get a modification of the state court order. He waited until after, first of all, knowing September 17 that a decision was going to be made, and then the decision having been made on September 17. The university had no notice that he was going to go into court and get the state court order modified on September 23. This was all part of the jury trial and fully vetted by the jury. We believe that the jury trial definitely shows that there were no due process violations. Mr. Carmody is arguing about summary judgment. There was summary judgment granted in favor of four individual defendants. All of those individual defendants were people in positions of authority. They did not have any personal involvement in the investigation or the findings that were made. Summary judgment was proper on their behalf because there's no respondeat superior under Section 1983, and they had no personal involvement in the claim that there was a due process violation, which the jury found there was none. The university board of trustees was granted summary judgment on the 11th Amendment. There's no claim against a university official acting in his or her official capacity, so that summary judgment was proper. Mr. Carmody's own motion for summary judgment, as the court has noted, now that there has been a jury trial, is actually a moot issue. And Mr. Carmody argues that the court apparently abused its discretion in finding that the privileged document was indeed privileged and failing to permit him to use it at trial. And then I think that that's a matter that was in the sound discretion of the trial court. There was no abuse of discretion that was shown in this case. And then the last charge is with respect to the court denying the motion to reconsider and to amend the complaint to reopen the post-termination process. The district court is without authority to do that. So the appeal in this case is without merit. The district court did not have authority to do that? The district court in its order stated that since the Seventh Circuit Court of Appeal had ruled that the dismissal of the post-termination process was proper and affirmed that dismissal that the district court had no authority to reopen and reconsider something that this court has already ruled on. There was one issue on a 60B motion, but that was not timely as I understand. Right. It was over a year. They had this information apparently through the FOIA requests, but they didn't raise it within the time limit under 60B and... There was no actual 60B motion filed. There was not. Okay. Yeah, that's correct. Okay. If there are no further questions, we would ask that the district court judgment be affirmed. Thank you. Thank you, Mr. Brinkman. Anything further? Mr. Polisi. Okay. How much time? Okay. In response to Mr. Brinkman's statement that the FOIA production was focused purely on the post-hearing, that's not accurate. Specifically, the calendar entries that are identified in the appendix that I provided to you identify the defendant, Adeseda, notwithstanding having testified previously that his only role in this process was to sign the charging letter and had no involvement in the pre-hearing determination, that he attended multiple meetings and that the folks underneath him attended multiple meetings as part of the process to basically come up with the charges for the sake of terminating Mr. Carmody. That was never brought out previously. It was only brought out because of FOIA requests and did not come through discovery, which it should have. So if we had known that this additional information had been available, we would much more likely have been able to show to the district court at that time that summary judgment, at least with regards to Mr. Adeseda, should not have been granted. Okay. Thank you, Your Honor. Thank you very much. Thanks to both counsel. The case will be taken under advisement.